COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Senior Judge Cole
Argued at Richmond, Virginia


LEWIS H. CLEMENTSON
                                        MEMORANDUM OPINION[*]
v.   Record No. 1859-96-2              BY JUDGE MARVIN F. COLE
                                            JUNE 24, 1997
NANCY TAYLOR CLEMENTSON, n/k/a
 NANCY LLOYD


           FROM THE CIRCUIT COURT OF HENRICO COUNTY
                   George F. Tidey, Judge

         Lawrence D. Diehl for appellant.

         Thomas Scott Word, III, for appellee.


     In this child custody cause, the appellant, Lewis H.

Clementson (father), challenges the sufficiency of the evidence

to support the trial court's determination that the best

interests of Elizabeth and Douglas Clementson would not be served

by transferring their custody to him, the children's father.  We

find no merit to this contention and affirm.

                            Facts

     Lewis and Nancy Taylor Clementson, now Nancy Taylor Lloyd,

(mother) were married on June 25, 1977.  They have three

children:  David, born August 2, 1980; Elizabeth, born December

6, 1982; and Douglas, born May 28, 1987.  Father is a practicing

attorney.  Mother is a school teacher.  The parties separated and

mother filed a bill of complaint on August 27, 1990, requesting a

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

divorce on the grounds of cruelty and desertion. She also requested spousal support, custody of the children, and equitable distribution of the marital property. Father filed an answer stating that he wanted the relationship to continue, but, in the alternative, he requested custody of the children.

On January 2, 1991, the trial court entered a consent order granting temporary custody of Elizabeth and Douglas to the mother and temporary custody of David to the father. Visitation rights were agreed to by the parties.

On January 22, 1991, a hearing was held concerning child custody, child support, spousal support, and other matters. The trial court found it in the best interests of the parties and the children that they all submit to medical, psychological and/or psychiatric examinations. They were ordered to attend all sessions required and to submit to all testings determined necessary by Dr. Dennis L. Hawley, a psychologist. Dr. Hawley was ordered to prepare a report with recommendations regarding custody and visitation of the children. The trial court further referred the matter to the Henrico County Department of Social Services to conduct a home study of the two homes and to prepare a report with recommendations regarding custody and visitation of the children. The temporary order entered on January 2, 1991 addressing child custody was continued in force.

On June 5, 1992, the trial court granted a final divorce to mother on the ground that the parties had lived separate and

apart for one year, commencing December 21, 1990. It affirmed, ratified and incorporated by reference into the decree a property settlement agreement dated May 28, 1992. The trial court declined to make a final determination of custody, child support, and visitation and reserved these matters for future consideration, and the award previously made was continued in force.

An ore tenus hearing was held on August 10, 13, and 28, 1992, on the question of permanent custody and support of the children. The record does not contain a transcript of this proceeding, but we know that the psychological report and home study previously ordered by the court were filed as evidence.

Dr. Hawley's evaluation, dated March 26, 1991 and filed with the court, included three individual sessions each with father and mother, and a full psychological battery of tests on each parent and each of the three children. In addition, Dr. Doyle Pruitt, a licensed clinical psychologist, saw each of the children once individually and all three collectively.

Dr. Hawley's report generally was favorable to the mother as custodian of all three children. As a result of the emotional trauma and upheaval in the family, he thought that it was important to keep all the children together. As between the parents, he felt that the mother was the least angry and vindictive of the two and that the children would fare better with the mother.

In a report dated April 18, 1991, the Henrico County Department of Social Services made its recommendations. A representative from the agency interviewed both parents, visited each home, and received additional information from school teachers and others. The agency reported that all three children should be kept together and recommended that custody should be awarded to the mother.

A report of Dr. Joseph J. Crowley, Ph.D., clinical psychologist, was introduced as an exhibit at the hearing. Dr. Crowley became involved on May 12, 1992, when mother's attorney referred her to him to help Elizabeth deal with concerns she was expressing to mother that she should be dominated by males. In addition, Dr. Crowley was asked to make recommendations to the trial court regarding custody of the Clementson children. Included in his report to the court was his assessment of father, his assessment of mother, and his assessment of each of the three children.

The details contained in Dr. Crowley's report about the family are significant. All of the facts and circumstances cannot be stated in this opinion. However, his report recommended that custody of all three children be awarded to the mother. Dr. Crowley reported that, although the father's style is more charismatic, engaging and spontaneous, the mother is more thoughtful, reflective and less spontaneous, and she has been quite successful at maintaining an even hand in regard to the

4

children.  Dr. Crowley further reported that the father had changed very little over the past year and a half.  However, the mother had shown substantial change in her own growth and development.  He stated that she has been successful in pursuing her vocational aspirations and has maintained herself as an independent, well functioning adult.  He concluded that the mother was the best suited to be the custodial parent, stating that she maintained a sensible and balanced home environment.

Based upon the evidence presented on August 10, 13, and 28, 1992, on November 16, 1992, the trial court entered a decree awarding permanent custody of David to father and permanent custody of Elizabeth and Douglas to mother.  Incidentally, counsel for both mother and father asked for entry of the decree.

On January 27, 1993, the trial court entered a decree fixing child support and visitation rights.  In this decree, the trial court restated the child custody provisions made in its decree of November 16, 1992.

Despite the fact that the trial court had finally resolved all outstanding issues, problems continued to surface and petitions continued to be filed.  On March 24, 1993, mother filed a petition for suspension of visitation rights, alleging that father was continuing to manipulate the children for his own purposes, and that he was continuing to hamper and frustrate the children's love for her.  On June 4, 1993, father filed a motion for reduction in child support, and, on the same day, he filed a

separate motion for change in custody. On June 9, 1993, mother filed a petition for modification of visitation rights to permit her to relocate in Alabama. On June 10, 1993, father filed a petition to enjoin removal of Elizabeth and Douglas from the state. On June 18, 1993, mother filed a motion to quash subpoenas served upon her to bring Elizabeth and Douglas to court for a hearing scheduled on June 28, 1993.

In an order entered on July 8, 1993, the trial court disposed of all of the issues. The trial court refused to permit relocation of the children to Alabama and decreed that the order of January 27, 1993, regarding visitation, custody, and child support remain in effect. Father's motions for change of custody and reduction of child support were denied, and he was enjoined from discussing mother's attempt to move to Alabama with Elizabeth.

A period of relative calm followed entry of the July 8, 1993 order. Mother described this as a "happy" period. During the 1996 spring break, Elizabeth and Douglas spent nine days with father. Mother testified that when the children returned home from the visitation, there was a specific, observable change in the children. Elizabeth came back angry with mother. She gave no specifics, but just said she was angry and mad with her. Douglas was also upset and mad at mother. Douglas said that father had taken him aside to have private talks. In later testimony, father denied that he had pushed, coaxed or

6

brainwashed Elizabeth to come live with him. He stated that during "one of these more thorough discussions that we had, I asked Elizabeth would she like somebody else to talk to about this; and she said, 'Yes.'"

Father testified that he and Elizabeth together contacted Dr. George Bright of the Adolescent Health Center and that they saw him on April 8, 1996. Dr. Bright's billing office records indicate that an office visit for psychotherapy was also made on April 27, 1996.

On April 29, 1996, Elizabeth disappeared from home after being dropped off at home by her school carpool. On April 30, 1996, father filed an emergency petition for custody, asking that custody of Elizabeth and Douglas be awarded to him. Mother answered by filing a petition for suspension of father's visitation rights.

On May 10, 1996, a hearing was held on these issues. At the May 10, 1996 hearing, father called Dr. Bright and Dr. Elouise Cobb as expert witnesses. Two friends also testified on his behalf. At the conclusion of father's evidence, mother moved the trial court to dismiss the petition because a material change in circumstances had not been proved. The trial court overruled this motion and proceeded to hear the evidence based upon the best interests of the children. The trial court entered an order on July 2, 1996, denying father's request for a change in the custody of Elizabeth and Douglas. This appeal followed.

At the May 10, 1996 hearing, Dr. Bright classified his practice as adolescent medicine.  Dr. Bright testified that Elizabeth asked him to have a meeting with her to discuss her request for a hearing before a judge to request a change of custody from her mother to her father.  At the initial stage of the meeting, it was disclosed to Dr. Bright that mother was the custodial parent.  Dr. Bright requested another member of the Adolescent Health Center, Dr. Elouise Cobb, a clinical psychologist, to join him and asked her if he could proceed with the evaluation since father did not have custody.  According to Dr. Bright, Elizabeth had requested that her mother not be contacted.  Dr. Bright and Dr. Cobb determined that it was legal and ethical for them to proceed.[1]  Dr. Bright referred Elizabeth to Dr. Cobb who performed a battery of standardized tests and rendered a written report, which was introduced in evidence.

Dr. Bright was asked to render an opinion on the emotional status of Elizabeth.  He stated she "is a very anxious young lady that shows indications of depression that's been there for a period of time."  He further testified that she had no other mental illness, but that she did have dysthymia.

On cross-examination, Dr. Bright admitted that he had not spoken to mother because his patient had told him not to do so. His file contained reports from Dr. Doyle Pruitt, Dr. Stolberg and Dr. Flynn which father had delivered to him, but he had no

[1]We express no opinion on these two issues.

8

knowledge of the reports of Dr. Dennis L. Hawley, the home study report of the Henrico County Department of Social Services or the extensive report of Dr. Joseph J. Crowley.  He did not have any transcripts of any of the previous custody hearings upon the question of custody that would have informed him of the conflicting evidence in this case.  He did not contact the school teachers to find out how Elizabeth or Douglas were doing in school, although he reports that Elizabeth was doing well.  His report taken from Elizabeth indicates that she participated in track and cheerleading, school musicals, and her church choir.

Dr. Cobb testified that her report was not intended as a custody evaluation.  It was intended "to help us understand Elizabeth's emotional status and her personal characterization that would contribute to understanding her adjustment at that time."

In her report, Dr. Cobb stated that Elizabeth was a petite, attractive young lady, and that she maintained a reserved demeanor and a steady smile at all times.  Other signs indicated that she was anxious.  When describing her mother, their relationship and specific events in her life at home, Elizabeth kept her smile, but her voice took on an angry tone.  Her language patterns and vocabulary level were mature.  Her fine motor skills were excellent.  In general, Elizabeth's response style was thoughtful and evidenced good development of strategy for problem solving.

Dr. Cobb testified there were a number of key findings from the evaluation data. One was that Elizabeth was an extremely intelligent child -- a child of superior intellect. She had some areas of extraordinary cognitive ability. Her verbal expressive skills were high. She achieved a score that was in the very superior range on a measure of social knowledge and practical reasoning ability. However, there was a finding of weakness in the area of ability to focus her mental activity to concentrate and to apply her mental skills in a focused manner. This was far below average.

Dr. Cobb gave no recommendation as to custody. She recommended that the court take another look at the current living arrangements. She admitted that she did not know all the factors, but suggested that the data that she had indicated that the current living situation was contributing to Elizabeth's poor adjustment.

Mother called as an expert witness Dr. Steven B. Robbins, a professor and chair of psychology and professor of psychiatry at Virginia Commonwealth University. He is a licensed clinical psychologist and has an active private practice. Dr. Robbins had reviewed the files of both Dr. Bright and Dr. Cobb. He opined that it undermines the credibility of the evaluation to consider only one parent. He stated that a psychologist has a responsibility to bring all informed parties to the table, clarify the rules, and to clarify consent and confidentiality.

He also testified that doctors have a duty to check multiple sources of information before making a diagnosis.

Dr. Robbins testified that, based upon the information contained in the files of Dr. Bright and Dr. Cobb, there was no evidence of risks or endangerment to Elizabeth. He noted that the intake officer at the Adolescent Health Center checked her personality as confident. He stated that all three persons from the Adolescent Health Center dealing with Elizabeth said she was functioning well in school. Socially, she was involved with extracurricular activities. Dr. Robbins also testified that there was no report that she had been in trouble to warrant the diagnosis of dysthymia. It was his opinion that the medical records do not support a diagnosis of dysthymia.

Mother testified that she married Lawrence Lloyd on June 10, 1994. She denied that Elizabeth had any sleeping disorder or sleep walking problem. She testified that she had no knowledge that Elizabeth had gone any nights without sleeping. She denied that Elizabeth had any eating disorder. She testified that Elizabeth is a healthy eater, she is informed about nutrition, and she drinks a lot of milk. Mother stated that, lately, Elizabeth has been following the track coach's regimen about eating meals prior to track meets.

Mother testified that Elizabeth attends Tuckahoe Middle School and that she is an active member of the chorus there. She participates in musical productions, is a member of the track

team, is a cheerleader, is active in church, and she takes part in other school activities.  Mother presented Elizabeth's report card showing all A's, except one B in math, with several complimentary comments by her teachers.

Mother testified that Elizabeth and Douglas had a good relationship with her husband, Lawrence.

Lawrence Lloyd testified that Elizabeth "seemed to be a happy, normal, well adjusted teenager to [him].  She has lots of friends and participates in a lot of activities at school and at church."  He also stated that "[t]here have been occasions after spending lengths of time with her father that she has come home in rather strange moods."  He opined that after a while she came out of them.

Lawrence testified that Elizabeth eats like a "normal teenager."  He stated that she sleeps normally and he observed no disfunction in her sleeping habits.

Lawrence testified that before Elizabeth went to father's home for spring break, there was nothing noteworthy about her attitude or emotions.  She seemed to be happy and a normal person.  He testified that when Elizabeth came home after the spring break, she was not distressed, but that she was not respectful to her mother and was not responsive to her or him.

Following the spring break and on the night that Elizabeth ran away, (April 29, 1996), Lawrence had a conversation with father in front of father's home when he carried David home.

12

Father admitted that he knew that Elizabeth had run away and that he had been notified of the incident by a "third party." On this occasion, father stated to Lawrence that it would be easy to settle the matter. All Lawrence had to do was to convince mother that she could end the whole thing by agreeing to transfer custody to father. At that time, Lawrence had no knowledge about any court hearing.

In addition to the run-away on April 29, 1996, father makes much of the fact that Elizabeth had run away on two previous occasions. In June of 1992, Elizabeth went to the home of her paternal grandparents. A custody hearing was scheduled on June 29, 1992. In March of 1993, she went to a shopping center. A custody hearing was scheduled on June 28, 1993. The record shows that the only time Elizabeth ran away from home was in preparation for a custody hearing.

### Analysis

In considering a petition to change child custody, a trial court applies a two-part test to determine "(1) whether there has been a [material] change in circumstances since the most recent custody award; and (2) whether a change in custody would be in the best interests of the child." Visikides v. Derr, 3 Va. App. 69, 70, 348 S.E.2d 40, 41 (1986). Where both parents are deemed to be fit custodians, the trial court is accorded considerable latitude in determining the custodial arrangement which will best serve the child's future interests. We will not reverse a

decision entered pursuant to Code § 20-107.1 unless it is apparent that the trial court abused its discretion by failing or declining to consider all the enumerated factors. See, e.g., Brooker v. Brooker, 218 Va. 12, 13, 235 S.E.2d 309, 310 (1977); Bristow v. Bristow, 221 Va. 1, 3, 267 S.E.2d 89, 90 (1980). The decision of a trial court shall be upheld on appeal so long as it is reasonably supported by substantial, competent, and credible evidence. See Canavos v. Canavos, 200 Va. 861, 866, 108 S.E.2d 359, 363 (1959). "'For purposes of appellate review, a trial court's determination is considered to have settled all conflicts in the evidence in favor of the prevailing party, and the prevailing party's evidence is entitled to all inferences fairly deducible therefrom.'" Haase v. Haase, 20 Va. App. 671, 684, 460 S.E.2d 585, 591 (1995) (citation omitted). "The trial court's decision, when based upon an ore tenus hearing, is entitled to great weight and will not be disturbed unless plainly wrong or without evidence to support it." Hughes v. Gentry, 18 Va. App. 318, 321-22, 443 S.E.2d 448, 451 (1994).

In this cause, the decision of the trial judge is peculiarly entitled to respect because he saw the parties, heard the evidence, has been in close contact with the family situation for six years, and has had an opportunity to determine the credibility of the witnesses and the weight to be accorded their testimony. This Court is limited to a review of the written record, much of which was not transcribed, and we are handicapped

14

by the absence of the transcripts from numerous hearings held before the trial court.

The trial court considered the best interests of both Elizabeth and Douglas and found that custody should remain with mother. The trial court's decision has settled all conflicts in the evidence, of which there are many. The trial court's decision is entitled to great weight. It is our duty to uphold its decision if it is supported by substantial, competent, and credible evidence. We find that it is. Accordingly, we find that the trial court did not abuse its discretion, and we affirm the decree.

Affirmed.

Benton, J., concurring.

The record in this custody case is extensive and reflects that a high degree of contentiousness exists between the parents. Because the trial judge heard ore tenus conflicting evidence, including evidence that clearly supports the decree, we cannot say that the trial judge's "determination is not without substantial, competent, and credible evidence to support it." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990). Therefore, I agree that the decree must be affirmed.